J-A11014-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| M.A.B., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| H.R.B., | |
| Appellant | No. 2009 MDA 2016 |

Appeal from the Order Entered November 4, 2016
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-348-2016

BEFORE:  SHOGAN and MOULTON, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 19, 2017**

H.R.B. ("Mother") appeals from child custody order entered November 4, 2016, regarding her daughter, E.R.B. ("Child"), born in August of 2003, to Mother and M.A.B. ("Father").  Upon careful review, we affirm.

In the opinion accompanying the subject order, the trial court set forth the relevant factual and procedural history of this case, which the testimonial evidence supports.  As such, we adopt it herein.  Trial Court Opinion, 11/4/16, at 5-7.

Child is the only child born of the marriage between Mother and Father.  The parties separated on December 16, 2015, when Father left the

_____

[*] Former Justice specially assigned to the Superior Court.

marital home.[1]  N.T., 9/8/16, at 11, 15.  On March 9, 2016, Father filed a custody complaint requesting shared legal and primary physical custody of Child.  In an interim order entered May 6, 2016, the trial court granted the parties shared legal custody.  The interim order also granted Mother primary physical custody, and Father partial physical custody on alternating weekends from 4:00 p.m. on Friday until 8:00 p.m. on Sunday, plus one weekday evening to be agreed upon by the parties, from 4:00 p.m. until 8:00 p.m.  In addition, the interim order provided for a shared physical-custody schedule on major holidays.  Interim Order, 5/6/16, at ¶¶ 1-3.

On September 8, 2016, the trial court held a custody hearing.  At that time, Mother resided in the marital home in Orwigsburg, Pennsylvania, which is a distance of approximately two miles from Child's school.  N.T., 9/8/16, at 16, 155.  One month before the custody hearing, Father had relocated to a two-bedroom home owned by his parents in Lake Wynonah, Pennsylvania.  N.T., 9/8/16, at 16-17.  The trial court found that Father's residence in Lake Wynonah is a driving time of approximately twenty minutes from Child's school.  Trial Court Opinion, 11/4/16, at 6.

At the custody hearing, Father testified on his own behalf.  Father also presented the testimony of Jerry Warner, a neighbor who lives next door to the marital home; and Brent Stramara, Father's friend.  Mother testified on

---

[1] At the time of the subject proceedings, a divorce complaint was pending between the parties.

- 2 -

her own behalf. She also presented the testimony of Father, as on cross-examination. In addition, Child, who was then thirteen years old and in the seventh grade, testified *in camera* in the presence of the parties' counsel.

In a custody order entered on November 4, 2016, the trial court granted the parties shared legal custody. During the school year, the trial court granted Mother primary physical custody, and Father partial physical custody on alternating weekends from 4:00 p.m. on Friday until 9:00 p.m. on Sunday, and one overnight per week, to be agreed upon by the parties, from 4:00 p.m. until Child returns to school the next day. Order, 11/4/16, at 1-2. During the summer months, the trial court granted the parties shared physical custody on alternating weeks. *Id*. at 2. In addition, the trial court set forth a shared physical-custody schedule for major holidays. *Id*. Finally, the trial court directed, "The parties shall undergo a drug and alcohol evaluation within 30 days of the date of this Order and shall attend and complete any recommended counseling and/or other treatment." *Id*. at 3.

On December 5, 2016, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court did not author a separate opinion pursuant to Pa.R.A.P. 1925(a). Rather, the trial court entered an order indicating that it was relying upon its opinion that accompanied the custody order.

Mother presents the following issue for our review:

Q. Did the trial court commit an error of law granting Father's petition for modification?

Mother's Brief at 7 (some capitalization omitted).

We review Mother's issue according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

> *R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

> *R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's

conclusions. *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d
533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004)).

Child custody actions are governed by the Child Custody Act, 23 Pa.C.S. §§ 5321-5340. Trial courts are required to consider "[a]ll of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). This section provides as follows:

**§ 5328.  Factors to consider when awarding custody.**

   **(a)  *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

   (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

   (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

- 5 -

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Furthermore, we have explained the following:

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.,* 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013). . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id.*

*A.V.*, 87 A.3d at 822-823.

Instantly, the trial court addressed each of the Section 5328(a) factors in its opinion that accompanied the custody order. Trial Court Opinion, 11/4/16, at 9-14. Specifically, the trial court found that Section 5328(a)(1), (9), (14), and (15) weighed equally between the parties; Section 5328(a)(3), (4), (7), (10), (11), and (12) weighed in favor of Mother; and Section 5328(a)(5) weighed in favor of Father. The trial court found the remaining statutory factors not relevant to this case. Upon thorough review

of the certified record, we discern no abuse of discretion by the trial court in its consideration of the Section 5328(a) factors.

Turning to Mother's issue, the crux of her argument is that the trial court erred in failing to enter the interim custody order as a final order. As such, Mother argues that the trial court erred by increasing Father's partial physical custody from a four-hour period once per week to one overnight per week during the school year, and by granting the parties equally shared physical custody during the summer months. Mother asserts that the trial court "materially alter[ed]" the interim order contrary to the record evidence. Mother's Brief at 18-20. Specifically, Mother contends that the trial court ignored Child's custody preference "without justification." *Id.* at 17. Further, Mother asserts that the trial court failed to address Father's purported "parental [im]maturity" with respect to his allegedly "breaking into the [marital] home and drinking and driving." *Id.* at 25. Mother's issue is without merit.

Initially, Mother's argument is flawed to the extent that she asserts the trial court granted Father's "petition for modification." Indeed, the certified record demonstrates that Father initiated this custody action on March 9, 2016, and his complaint was the subject of the custody hearing. The parties operated under the May 16, 2016 interim order following unsuccessful custody conciliation conferences. Trial Court Opinion, 11/4/16, at 5. Further, because Father requested primary physical custody in his custody

complaint, we disagree with Mother's assertion that the trial court granted Father's physical-custody request. It follows that we reject Mother's assertion that the final order "materially alter[ed]" the physical custody arrangement followed by the parties since their separation.

With respect to Mother's contention regarding Section 5328(a)(7), *i.e.*, the well-reasoned preference of the child based on the child's maturity and judgment, we observe that, in denying Father's request for primary physical custody, the trial court weighed this factor in favor of Mother. The trial court stated the following in its opinion accompanying the subject order:

> [Child] expresses her desire to continue to live with Mother at the marital residence where she has resided since birth. It makes excellent sense since it is a brief drive to [C]hild's current and future schools within the Blue Mountain School District. She spends a significant period of time with Mother at extracurricular activities[ w]hile both parents have shared equally in supervising [her] school work. As a result, [Child] excels in school and extracurricular activities. The current Interim Order is working well. This factor favors Mother.

Trial Court Opinion, 11/4/16, at 11.

Upon review, Child's testimony supports the trial court's findings. We discern no abuse of discretion by the trial court in weighing this factor in favor of Mother by granting her primary physical custody during the school year and Father partial physical custody one overnight per week and on alternating weekends during the school year.

Likewise, we discern no abuse of discretion by the trial court in the weight it placed upon Section 5328(a)(7) in fashioning its order concerning

the physical-custody schedule during the summer months. Child testified as follows on inquiry by the trial court:

> Q. What about, like, during the summertime in a shared situation where you go, like, one week -- now, this is not during the school year. This would be during the summertime. You would be one week with Mom in Orwigsburg and then one week over in Lake Wynonah?
>
> A. I never really, like, thought of it that way. I don't know, like, because, like, sometimes I get homesick from being away from my mom and stuff; but I don't really know, like, how that would really work out.
>
> Q. Because you haven't experienced it?
>
> A. Yeah, I haven't experienced it; so I don't really know how it would work out.

N.T., 9/8/16, at 77-78.

Further, Child testified on cross-examination by Father's counsel as follows, in relevant part:

> Q. Your dad's house in Lake Wynonah, he's only been there about a month or so?
>
> A. Yeah.
>
> Q. And you stayed over there?
>
> * * *
>
> A. Yeah.
>
> Q. And you have your bedroom over there?
>
> A. Yeah.
>
> Q. [Father] said he furnished it and everything?
>
> A. Yeah.

Q. Do you like it?

A. I love it.

Q. What do you love about it?

A. It's, like, all my favorite colors; and it's all nice and properly put together and everything.

Q. Did you participate in that?

A. Yeah.  My aunt actually did it for me.  She . . . talked to me about what colors I wanted the sheets, the curtains. . . .[2]

*Id.* at 81.  Based on Child's testimony, and our review of the entirety of the certified record, we will not disturb the trial court's decision to grant the parties equally shared physical custody on an alternating weekly basis during the summer months.

Finally, we reject Mother's contention that the trial court failed to address Father's alleged "parental [im]maturity."  Mother's Brief at 25. First, Mother asserts that the trial court failed to address Father's alleged "drinking and driving."  *Id*.

In considering Section 5328(a)(14), the history of drug or alcohol abuse of a party or a member of a party's household, the trial court opined:

There is no history of drug abuse.  However, many of the exhibits introduced by both parties indicate that there may be cause for concern with regards to both parties imbibing alcohol. Both parties must have an alcohol evaluation performed by one

_____

[2] On inquiry by the trial court, Child testified that her aunt is E.B., the wife of Father's brother, M.B.  N.T., 9/8/16, at 82.

of the reputable evaluation services utilized by Schuylkill County Children and Youth to assess whether there are treatable alcohol concerns. Nevertheless, neither party has had an arrest or conviction for driving under the influence or other criminal behavior.

Trial Court Opinion, 11/4/16, at 13-14.

Upon review of the certified record, we conclude that the testimonial and documentary evidence supports the trial court's findings. Indeed, the trial court directed the parties to "undergo a drug and alcohol evaluation within 30 days of the date of this Order and shall attend and complete any recommended counseling and/or other treatment." Order, 11/4/16, at ¶ 4. Therefore, we reject Mother's assertion that the trial court failed to address Father's alleged drinking and driving.

Second, Mother asserts that the trial court failed to address her claim regarding Father allegedly "breaking into the [marital] home." Mother's Brief at 25. In considering Section 5328(a)(9), which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs, the trial court stated the following:

> Mother contends that Father left the marital home without talking to [C]hild and later while Mother and [C]hild were on vacation took various items of furniture and a television from the family room in the marital home, and did not timely inform Mother or [C]hild that he had taken the furniture. Upon arriving home, Mother and [C]hild thought the home was burglarized. It appears[,] however, that this history involved the contentious divorce proceeding which appears to be well on its way to resolution. Both parties appear capable of maintaining a loving, stable, consistent and nurturing relationship with [C]hild and truly desire to continue to attain these goals. This factor favors both parties.

Trial Court Opinion, 11/4/16, at 12. Our review of the record reflects that Father's testimony supports the trial court's findings, and we discern no abuse of discretion by the trial court in the weight it placed on this evidence in fashioning its custody order.

The trial court carefully and thoroughly considered Child's best interests, and the certified record supports the trial court's custody decision. Thus, we affirm the order.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/19/2017